## LOUISIANA PURCHASE EXPOSITION COMPANY, Respondent, v. BENJAMIN SCHNURMACHER, Administrator, Appellant.

### Springfield Court of Appeals, December 5, 1910.

1. **CORPORATIONS: Subscription to Stock: Delivery in Escrow: Question of Fact.** In a suit to collect an alleged subscription to stock in the Louisiana Purchase Exposition Company, the defense was made that the subscription had been delivered in escrow to defendant's son, to be destroyed in case any part of Forest Park was selected as a site for the exposition, and that said park having been selected, the subscription was never delivered, and therefore was not binding. There was testimony both ways on this question. *Held*, that this raised an issue of fact and the court sitting as a jury, having found for plaintiff, such finding was binding.

2. ———: ———: **Louisiana Purchase Exposition Company: Preliminary Subscriptions: Statutes Distinguished.** In a suit to collect an alleged subscription to stock in the Louisiana Purchase Exposition Company, the defense was made that the subscription was preliminary only, and prior to the incorporation of the company; that the defendant did not sign the article of incorporation, and for that reason the subscription was not enforcible. The facts were not disputed, and defendant, relied on the case of Railroad v. Wilkerson, 83 Mo. 235, where it was held that a subscription to the capital stock of a railroad corporation to be formed in the future was not binding. The statutes for the incorporation of railroads and for the incorporation of the Louisiana Purchase Exposition Company are examined and distinguished and, *held* that the preliminary subscription to the Exposition Company was valid and binding under the statutes providing for the incorporation of that company.

3. **STATUTORY CONSTRUCTION.** It is a familiar canon of the construction of statutes that the conditions under which the statute was enacted and the purpose to be secured by it, should always be kept in view, in determining what the Legislature meant by the language used in the statute.

4. **NOTICE: Denial of Liability: Waiver of Subsequent Notice: Corporations: Subscription to Stock.** The defendant himself testified that he had received notice that his subscription to stock was due and that he then notified the plaintiff that he would not pay it, and denied all liability under said subscription. *Held*, that subsequent notices were not necessary.

Appeal from St. Louis Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Mann, Johnson & Todd* and *Alexander Young* for appellant.

(1 ) Defendant submits that plaintiff's contention that the Wilkinson case, 83 Mo. 235, is not in point, cannot be sustained. The only difference between that case and this is that one is a World's Fair Corporation and the other a railroad corporation; but each of them is organized under statutory provisions. (2) It is elementary law that delivery is as essential as signing, and both must be intentionally done. In fact, the delivery is the consummation of the bargain, and this so much so that the place where a contract was made is the place where it was delivered, not where it was signed. Johnson v. Gaytry, 83 Mo. 339, 11 Mo. App. 322. (3) If it be said that there was a delivery to Fred, it was in the nature of an escrow and the terms of the delivery will be respected. Price v. Ins. Co., 54 Mo. App. 119. (4) There is no ground for estoppel as aginst defendant in this case. Acton v. Dooley, 74 Mo. 63; Taylor v. Zepp, 14 Mo. 482; Blodgett v. Perry, 97 Mo. 263; Shields v. McClure, 75 Mo. App. 631; Brammell v. Adams, 146 Mo. 70; Trust Co. v. Horn, 83 Mo. App. 114.

*Franklin Ferriss, Jos. Zumbalen, Wm. E. Baird* and *L. L. Leonard* for respondent.

(1) A subscription to stock, executed in writing and delivered by the subscriber in person to the promoters, with no conditions or reservations, is a valid and binding contract. Haskell v. Sells, 14 Mo. App. 101; 26 Am. and Eng. Ency. Law, 903.; Railroad v. Collins, 46 Pac. 289; Colfax Hotel Co. v. Lyon, 69 Iowa 688; 1 Purdy's Beach on Priv. Corp., secs. 205, 209, 214. (2) It is not necessary in the case of a corporation organized under the provision of article 18, chapter 12, R. S. 1899, for the purpose of holding a world's fair, that all of the subscribers should sign and acknowledge the articles of agreement. Subscriptions to the stock of such corporations, made prior to incorporation, on books or papers other than said articles of agreement are valid and binding. Railroad v. Perkins, 28 Iowa 283; Haskell v. Sells, 14 Mo. App. 101; Exposition Co. v. Kuenzel, 108 Mo. App. 105; Haskell v. Worthington, 94 Mo. 560; Railroad v. Crow, 137 Mo. App. 461; Association v. Williams, 137 Mo. App. 575; Machine Co. v. Davis, 40 Minn. 110, 3 L. R. A. 796; Knox v. Land Co., 86 Ala. 180; Railroad v. Duncan, 28 Mich. 130; Boot & Shoe Co. v. Hoit, 56 N. H. 548; Baltimore v. Hamilton, 77 Md. 346; Yonkers Gazette Co. v. Taylor, 30 N. Y. App. 334. (3) F. W. Ziegenhein was the son, private secretary and agent of the defendant, and even if the evidence had supported defendant's assertion as to the delivery on secret condition of the subscription contract sued on, to his said son and agent, such delivery to his own agent, on a secret condition without the knowledge of the other contracting parties, could not in law constitute an escrow. State ex rel. v. Potter, 63 Mo. 212; State ex rel. v. Baker, 64 Mo. 167; Hall v. Smith, 14 Bush (Ky.) 604; Smith v. County

Commissioners, 59 Ill. 412; Webb v. Baird, 27 Ind. 368; Butler v. U. S., 88 U. S. 272; Bank v. Gordon, 114 Mo. 209; 11 Am. and Eng. Ency. Law, 337; Organ Co. v. Swatzell, 61 Mo. App. 490; Hurt v. Ford, 142 Mo. 300; Machine Co. v. Davis, 40 Minn. 110, 3 L. R. A. 796; Stewart v. Anderson, 59 Ind. 375; Hubbard v. Greeley, 84 Me. 340; Cocks v. Barker, 49 N. Y. 107.

COX, J.—Action by the plaintiff corporation against Henry Zeigenhein to collect a supposed subscription of five thousand dollars to the capital stock of the corporation. After the trial the defendant died and the case had been revived in the name of his administrator. Trial was had in the circuit court of St. Louis county before the court, and the issues found for plaintiff, and from the judgment in its favor the defendant has appealed. The date of the subscription was prior to the formation of the corporation, and the defense to the action was two-fold. First, that the subscription being preliminary only, and the defendant not having signed the articles of incorporation nor having subscribed for stock after the formation of the corporation his subscription was for that reason null and void. Second, that the subscription paper which he signed was delivered in escrow to his son, Fred W. Zeigenhein, to be by him held until the site for holding the exposition should be selected and in case any part of Forest Park should be selected the subscription should either be destroyed or returned to the subscriber, and that Forest Park was selected as a site for the exposition and his subscription was, therefore, never delivered and was for that reason not binding.

The defense that the subscription was delivered in escrow only and was never delivered to the plaintiff raised an issue of fact, and by reading the testimony taken at the trial we find there was testimony sufficient to warrant a finding either way upon that question and

the court, sitting as a jury, having found in plaintiff's favor, that finding is binding upon us.

As to the other defense that the deceased, Zeigenhein, signed a subscription for five thousand dollars of the stock of plaintiff prior to its incorporation, it was not contested that the subscription antedated the formation of the corporation, and to sustain defendant's contention that this made a complete defense to plaintiff's cause of action we are cited to the case of the Sedalia, etc., Railway Co. v. Wilkerson, 83 Mo. 235, in which the Supreme Court held that a subscription to the capital stock of a railway corporation to be formed in the future was not binding, and it was stated in that case that the only way a person could become a stockholder in a railroad corporation was by signing the articles of incorporation, or by subscribing for stock after the corporation was organized. It is now insisted that that decision is controlling in this state and that this court is, therefore, bound by it and must for that reason reverse this case.

It will be observed that the decision in the Wilkerson case was based upon the statute providing for the incorporation of railroad companies, and if the statute under which the plaintiff corporation was organized was identical with the railroad statute in its general scope and in its specific provisions this court would be bound by the Wilkerson case, and would of necessity be compelled to reverse the judgment in this case.

It is a familiar canon of construction of statutes that the conditions under which the statute was enacted, and the purpose to be secured by it, should always be kept in view in determining what the legislature meant by the language used in the statute. Keeping this in view and looking to the history of the statute under which the plaintiff was incorporated, we find that the incorporation of the plaintiff was for the purpose of holding what is commonly known as the World's

Fair at the city of St. Louis. The idea of holding such an exposition was conceived by public spirited men interested in the welfare of our great state and it is a part of the history of this great fair that it was understood from the beginning that it was launched as a great public enterprise put forth for the general good and not as a means of profit by its promoters. Large donations were made to it by the state and nation, and it was not expected at any time that the promoters would reap any profit from it, but it was, at its inception, understood that a part of the expenses might have to be borne by its promoters. Therefore, the statute which authorized the formation of the plaintiff corporation for the purpose of holding the World's Fair should be given such a construction as will conform to the purpose to be secured by its enactment. This statute, chapter 12, article 18, Revised Statutes 1899, is very different from the statute providing for railroad corporations which was construed in the Wilkerson case, supra. Railroad corporations are organized as a private enterprise, conducted for profit. That statute, now section 1034, Revised Statutes 1899, upon which the decision in the Wilkerson case is based provides that any number of persons, not less than five, may form a corporation for the purpose of constructing, maintaining and operating a railroad, and for that purpose may make and sign articles of association in which shall be stated the name of the company, the number of years the same is to continue, places from and to which the road is to be constructed, the length of the road, as near as may be, and the name of each county in the state through or into which it is made or intended to me made, the amount of the capital stock of the company, with certain limitations based on the mileage of the road, the number of shares of which said capital stock shall consist, the names

and places of residence of the directors of the company, not less than five nor more than thirteen in number who shall manage its affairs the first year and until others are chosen in their places. Then follows provisions as follows: Each subscriber to such articles of association shall subscribe thereto his name, place of residence and number of shares of stock he agrees to take in said company; that the articles shall be filed with the Secretary of State and thereupon the persons who have so subscribed to said articles of association, and all persons who shall become stockholders in said company shall be a corporation by the name specified in said articles of association, and shall possess the powers and privileges granted to corporations and be subject to the provisions relating thereto contained in this chapter.

Section 957, Revised Statutes 1899, which was also in force at the time of the decision in the Wilkerson case and which is found in article 1, chapter 12, which contains general provisions supposed to be applicable to all corporations alike wherein not otherwise specified provides as follows: "When such articles of association and affidavit are filed in the office of the Secretary of State the directors named in said articles of association may, in case the whole of the capital stock is not before subscribed, open books of subscription filling up the capital stock of the company . . . ," and it was upon the construction of the two sections of the statute above referred to that the Wilkerson case rested. The statute under which the plaintiff was organized, sections 1523 and 1524, Revised Statutes 1899, are as follows:

"Section 1523. *Who may form Corporation—Articles of Agreement Shall set Forth, What.*—Any twenty-five or more persons, who shall have associated themselves by articles of agreement, in writing, as provided by law, for the purpose named in section 1528

of this article, may be incorporated under any name or title designating the business to be transacted. The articles of agreement aforesaid shall set forth: First, the corporate name of the proposed corporation, which shall not be the name of any other corporation heretofore incorporated in this state for similar purposes, or an imitation of such name; second, the name of the city, town or county in which the corporation is to be located; third, the amount of the capital stock of the corporation, the number of shares and the par value thereof, which shall not be less than ten dollars nor more than one hundred dollars per share, and that not less than one-half of the entire amount thereof has been subscribed in good faith, and ten per cent of the amount subscribed actually paid up in lawful money of the United States, and is either in the possession of the persons named as the first board of directors, or has been disbursed for preliminary expenses of organization; fourth, the names and places of residence of the first fifty of the subscribing shareholders and the number of shares subscribed by each; fifth, the number of the board of directors and the names of those agreed upon for the first year; sixth, the number of years the corporation is to continue, which in no case shall exceed ten years; seventh, the purposes for which the corporation is formed."

"Section 1524. *Articles of Agreement, How Signed and Acknowledged—Secretary of State to Issue Certificates—Rights, Powers and Privileges of Corporation.*—The articles of agreement shall be signed and acknowledged by the parties thereto, and recorded in the office of the recorder of deeds of the county or city in which the corporation is to be located, and a certified copy of such recorded instrument shall be filed in the office of the Secretary of State, who shall thereupon give a certificate that said corporation has been duly organized, and such certificate

shall be taken by all courts of this state as evidence of the corporate existence of such corporation. The persons so acknowledging such articles of association, and their successors, shall, for the period designated in such articles of association, not to exceed ten years next succeeding the issuing of such certificate by the Secretary of State, be a body corporate; and by such name they and their successors, shall be entitled to have, possess and enjoy all the rights, powers and privileges conferred by law upon corporations, subject to the provisions of this article.''

It will be noticed that the provisions of these two sections are not identical with the section applied to railroad corporations. The railroad corporation authorizes any five or more persons to incorporate while this statute requires at least twenty-five. That fact alone indicates that the Legislature understood that an incorporation for the purpose of holding an exposition should be to a certain extent a public institution. We also find that this statute, section 1523, requires the twenty-five who sign the articles of incorporation to set forth in said articles the names and places of residence of the first fifty of the subscribing shareholders and the number of shares subscribed by each. The fact that the provision which requires the names and places of residence of fifty subscribing shareholders to be stated in the articles of association only requires twenty-five to sign the articles of association of itself shows that the legislature contemplated that there would be preliminary subscribers other than those signing the articles of association, and if a preliminary subscriber was not to be regarded as a stockholder in the corporation when organized how could twenty-five persons who were authorized to form the association comply with the statute and give the names of fifty stockholders in the corporation? Again in section 1524

151 App—39

we find this language: "The persons so acknowledging said articles of association and their successors shall, for the period designated in said articles of association, not to exceed ten years next succeeding the issuing of said certificate by the Secretary of State be a body corporate; and by said name they and their successors shall be entitled to have, possess and enjoy all the rights, powers and privileges conferred by law upon corporations *subject to the provisions of this article.*" The railroad statute provides that "Each subscriber to said articles of association shall subscribe thereto his name, place of residence and the number of shares of stock he agrees to take in said company." This provision is not in the statute under which the plaintiff was incorporated. The railroad statute also provides, "And thereupon the persons who have so subscribed said articles of association and all persons who shall become stockholders in said company shall be a corporation." While the language of the statute now under consideration is "Persons so acknowledging said articles of association and their successors shall . . . be a body corporate, and by said name they and their successors shall be entitled to have, possess and enjoy all the rights, powers and privileges conferred by law upon corporations *subject to the provisions of this article.* These two provisions are not identical—the one refers to those who have signed the articles of association; the other to those acknowledging the articles of association, and while this may be construed to mean practically the same thing yet the latter section under which the plaintiff was organized is coupled with this provision *"subject to the provisions of this article"* which means that this article is to be complete in itself, and is to govern corporations organized under it unless the provisions of the general statute are called into play by specific references thereto. The railroad statute, section 1034, concludes with

these words, ''Shall possess the powers and privileges granted to corporations, and be subject to the provisions relating thereto contained in this chapter.'' The chapter referred to is chapter 12 which contains 19 articles and embraces the entire statute relating to corporations, and, hence any provision therein applicable to a railroad corporation must be considered in construing section 1034.

Further distinguishing the statute under which plaintiff is organized from the railroad statute we find a provision, section 1526, that its board of directors shall be not less than twenty-five nor more than seventy-five in number, a majority of whom shall be bona fide citizens of this state; again showing that the Legislature understood that any corporation formed under this article should be a public institution. Then follows provisions for the election of directors, the filling of vacancies and other matters that are usually left to the by-laws of an ordinary business corporation. In business corporations there is a provision for a fee being paid to the state. Under this article no fee is exacted. There is also a provision, section 1534, that certain property held by a corporation under this article shall be exempt from taxation. This provision is not found in the statutes relating to railroads and other corporations organized for profit. This statute also provides, section 1532, that a corporation organized under it may condemn property as provided in cases of other corporations, but adds that it may appropriate only an interest in such lands, or may take it in fee simple, and that this shall be considered in estimating the damages. This corporation is also authorized, section 1531, to acquire and hold such property as may be necessary or incident to the carrying out of the purpose of its organization, and it may also convey the same, or any part thereof, or any interest therein, by way of gift or donation for a limited period

of time, or in perpetuity, to any educational or other institution of a public nonsectarian character. It also provides, section 1533, for the manner in which a corporation organized under this article may dissolve. It is also provided, section 1530, that no dividend shall be declared or paid until all debts of the corporation are provided for. All these various provisions in this statute, coupled with the provision that a corporation formed under it could not exist for a longer period than ten years, conclusively shows that the law-makers understood that they were providing for a corporation that was to serve a public purpose and that when that purpose had been accomplished the corporation should cease. This position is emphasized by the provision of section 1525 which provides that the capital stock of the corporation organized under this article should not be less than five million dollars nor more than twenty million dollars, and requires at least one-half of the entire amount of the capital stock to be subscribed for in good faith, and not less than ten per cent of the amount subscribed actually paid up at the time of the filing of the articles of association. The plaintiff corporation was organized with a capital stock of five million dollars, and the subscriptions to the stock that were taken before the corporation was organized provided that they should not be binding until the full amount of five million dollars should have been subscribed. Thus it will be seen that the contract which the subscriber entered into when he subscribed for shares of stock was that the full amount should be subscribed before the corporation should be organized. This being true, there would be no place for the application of the general statute which provides that the board of directors may open books for the subscription of stock after the organization of the corporation for there would be no stock to be subscribed for after that time. This the party subscribing for stock well under-

stood. He also understood that his subscription was to a certain extent in the nature of a public donation, and we think a subscription made under these circumstances should receive a more liberal construction than the ordinary subscription to a business corporation.

Our conclusion is that a proper construction of the statute and the contract of the parties themselves is that the twenty-five men who signed the articles of incorporation were the agents of all the subscribers and that each was bound by his contract to pay what he had agreed to pay by his subscription to the stock.

Contention is now made that the evidence failed to show that the deceased, Zeigenhein, was notified of the calls of the board of directors for payments upon his subscription of stock, and that for that reason the suit was prematurely brought, contending that notice and demand of payment were necessary before any suit could be maintained upon this subscription. The answer to this contention is that the defendant himself testified upon the trial that he did receive one notice, and that he then notified the plaintiff that he would not pay it, and denied all liability under his subscription. This being true, it is a familiar rule of law that subsequent notices were unnecessary. The judgment will be affirmed. All concur.