SHARON J. PATE, APPELLANT, v. CHARLES G. ROSS, RESPONDENT.—84 S. W. (2d) 961.

Springfield Court of Appeals.   June 27, 1935.

Rehearing denied, July 26, 1935.

*Sam J. Corbett* for appellant.

*Ward & Reeves* and *C. G. Shepard* for respondent.

BAILEY, J.—This is a suit to recover attorney fees in certain delinquent drainage tax suits. The defendant is the county collector of Pemiscot county, and holds the fees sought to be recovered under an agreement pending the outcome of this litigation. The case was tried under an agreed statement of facts and in addition the testimony of defendant. The agreed statement of facts is as follows:

"Now at this time it is admitted that the plaintiff Sharon J. Pate, is the duly appointed, qualified and acting attorney for drainage districts Nos. 6, 8, 10, 12, 14, 16, and 18, of Pemiscot County, Missouri, and was at all times mentioned in plaintiff's petition and in the answer. That the defendant, Chas. G. Ross is and was at all times mentioned in the petition and answer, the duly elected, qualified and acting collector of the revenue of Pemiscot County, Missouri; and that among the duties of his office was the collection of the tax assessments of the drainage districts named. It is admitted that as Collector of the Revenue of Pemiscot County, Missouri, and acting for the

drainage districts mentioned, that the defendant, Chas. G. Ross, collected the attorney's fees as set forth in Exhibit A attached to plaintiff's petition, and the suits therein named, to the total amount of $1072.63.

"It is further admitted that the defendant, in the exhibit 'A' filed with plaintiff's petition, paid the amount of the attorney's fees and court costs, as mentioned and set forth in exhibit 'A' to plaintiff's petition, under protest; and that each of these cases were filed by Chas. G. Ross, as collector of revenue, by the plaintiff herein as attorney for said drainage districts, and that said suits were filed and pending in the Circuit Court of Pemiscot County, Missouri, at the time plaintiff's exhibit 'A' showed that the tax and other amounts mentioned thereon were paid, and that no judgment had been rendered in either of said cases, and the circuit court had made no order as to the amount of costs or attorney's fees. And that while said cases were pending in said court the different named landowners mentioned in plaintiff's exhibit 'A,' went to the collector and paid their taxes, and refused to pay the costs and attorney's fees. But upon agreement between each of them and Chas. G. Ross, said amount of costs and attorney's fees as shown by exhibit 'A' were paid to Chas. G. Ross, to be by him held until the matter was determined by a court of competent jurisdiction, and that the said Chas. G. Ross still holds under that agreement the said sum sued for herein, $1072.63."

Defendant Ross testified the amount of attorney fees shown by Exhibit A had been collected by him; that he held said fees under an agreement whereby the drainage taxes were paid including attorney fees and costs in pending delinquent suits, the attorney fees and cost being paid under protest, the money so collected for attorney fees to be paid Mr. Pate in the event the courts should hold the property owners liable for such tax, otherwise, said monies were to be returned to the property owners.

The defense set up in defendant's answer is to the effect that under the provisions of Senate Bill No. 80 (Acts of 1933, p. 423), the attorney's fees sued for are remitted, and are not collectible; that under the provisions of section 10828, Revised Statutes 1929, combined with said Senate Bill, the attorney fees sued for herein are not chargeable against the land upon which drainage taxes were paid and plaintiff is therefore not entitled to recover. On trial to the court, judgment was for defendant and plaintiff has appealed.

Plaintiff makes one specific assignment of error to the effect that the trial court erred in holding that the provisions of Senate Bill 80 applied to drainage districts. Sections 1 and 3 of the act in question read as follows:

"Sec. 1. In payment of the taxes assessed against any person

whose name appears upon the personal delinquent lists of any year or years prior to January 1, 1933, and in payment of the taxes assessed against any real estate which appears upon the lists of delinquent and back taxes of any year or years prior to January 1, 1933, including delinquent taxes for the year 1932, the collectors of revenue of the counties and cities of this State are hereby empowered and directed to accept the original amount of said taxes as charged against any such person or real estate relieved of the penalties, interest and costs accrued upon the same; provided, however, that such remission of penalties, interest and costs shall be in full if said taxes are paid not later than June 30, 1933; if paid after June 30, 1933, and not later than August 31, 1933, then such remissions shall be seventy-five per cent of such penalties, interest and costs; if paid after August 31, 1933, and not later than October 31, 1933, such remission shall be fifty per cent of such penalties, interest and cost; if paid after Oct. 31, 1933, and not later than Dec. 31, 1933, then such remission shall be twenty-five per cent of such penalties, interest and costs: Provided, further, that after Dec. 31, 1933, all penalties, interest and costs as aforesaid shall be restored and be in full force and effect for the full period of time since their accrual and as if this act had not been passed.

"Sec. 3. As the expeditious collection of such taxes and lists is necessary for the maintenance of the State institutions and for the support of public schools, an emergency exists within the meaning of section 57 of article 4 of the Constitution of this State and also an emergency exists within the meaning of section 36 of article 4 of the Constitution of this State, and this act shall be in force and take effect from and after its passage and approval by the governor." [1933 Laws, pp. 423-424.]

Plaintiff argues that the foregoing law indicates that the intention of the Legislature was to enact a law to apply only to delinquent taxes from which revenue is derived for the maintenance of State institutions and for the support of public schools. This contention is upon the theory that the bill in the first section refers to "taxes assessed against any real estate which appears upon the list of delinquent and back taxes," and that the emergency clause refers to taxes due the State and for the support of public schools; that drainage taxes are not taxes for public purposes within the purview of the constitution pertaining to revenue and taxation but are special assessments for local improvements and that the Legislature could not have had drainage taxes in mind when it said in the emergency clause that an emergency exists for the maintenance of State institutions and for the support of the public schools.

We are unable to agree with this contention if we are to follow

the ordinary canons of construction as applied to legislative acts. It is a familiar rule that the conditions under which a statute is enacted and the purpose intended should be kept in view in determining the meaning and scope of language used in such statute. [Louisiana Purchase Exposition Co. v. Schnurmacher, 151 Mo. App. 601, 132 S. W. 326.] Likewise it is held that statutes should be construed so as to effectuate the purpose of its enactment, to accomplish which purpose words may be restricted or extended. [Kerens v. St. Louis Union Trust Co., 223 S. W. 645, 283 Mo. 601.] To arrive at the legislative intent wherein a general term is used giving rise to an ambiguity, resort may be had to the title to determine the true meaning of the statute. [In re: Graves, 30 S. W. (2d) 149; Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1, 22 L. R. A. (N. S.) 1045, 17 Ann. Cas. 516.] In applying the foregoing rules of construction to this case we find the title to the act called Senate Bill No. 80, found on page 423, Laws of 1933, reads as follows: ''An act in relation to delinquent and back taxes and to personal and land delinquent tax lists, and for the relief of persons whose names or property appear on said delinquent lists or either or any of them or whose personal or real estate taxes became delinquent on or before January 1, 1933, with an emergency clause.''

The title clearly indicates the primary legislative intent to be for the relief of all persons whose personal or real estate taxes had become delinquent on or before January 1, 1933. What were the conditions at the time the act was enacted? It is well known that many taxpayers were in financial distress (and for that matter they still are). On all sides were cries for relief from the situation in which our people found themselves. The Legislature apparently heeded those cries and enacted the law under consideration as well as other relief legislation. The fact that the emergency clause refers to the necessity of expeditious collection of taxes for the maintenance of schools and State institutions as constituting an emergency, does not, in our opinion, change one iota the object declared in the title of the act which was fundamentally to relieve the taxpayers from the burdens of penalties and cost accrued on their delinquent taxes. There is nothing in the act to indicate the Legislature intended to limit that relief to taxes for the support of State institutions and public schools. No mention is made in the emergency clause of taxes due counties or other political subdivisions. Surely it would not be contended that penalties due on county taxes were not intended to be included in the remission of costs. The act simply refers to taxes assessed against any real estate. Certainly the tax levied to pay the costs of drainage improvements is a tax assessed against land and is payable at the same time and collected in the same manner as are other taxes.

[Section 10823, Revised Statutes 1929; Chilton et al. v. Drainage District, 63 S. W. (2d) 421.] We perceive no more reason to relieve the taxpayer from the penalties and costs in the one case than in the other. If the avowed object of the law in question was for the relief of the taxpayer, then to hold the owner of land against which the drainage tax has been assessed, liable for the penalties that had accrued, would partially, at least, defeat the very object of the law itself.

It is suggested that Senate Bill 94, passed at the same session of the Legislature, Laws 1933, p. 425, by which the whole system of collecting general taxes was changed, but which provided that nothing therein should change the method of collecting drainage assessments, indicates a legislative intent to differentiate between drainage taxes and other taxes. We can perceive reasons why the Legislature placed that proviso in the law above referred to, but no good reason appears for considering that question. Senate Bill 94 has nothing to do with the remission of penalties provided for in Senate Bill No. 80. The latter stands alone as a relief and remedial measure. It is said that, "Under the general rule, statutes providing for the remission of penalties being remedial, should be liberally construed; and should be extended to all cases coming within the reason of the rule of the statutes." [61 C. J. 1493.] The only case called to our attention in which the particular question here involved was passed upon held that drainage taxes as well as State, county and school taxes were included in a general statute relieving the taxpayer from penalties. [Livesey v. DeArmond et al. (Ore.), 284 Pac. 166.] We think a fair construction of the statute requires us to hold that it includes taxes assessed for drainage improvements.

We have not overlooked the case of Ranney v. City of Cape Girardeau, 255 Mo. 514, 164 S. W. 582 (cited by appellant) which holds that the section of the Constitution declaring that taxes shall be uniform and collected by general law, does not apply to special tax bills for street improvements and that such special tax bills are not taxes at all within the purview of the Constitution relating to revenue and taxation. We have no similar question in this case. If the intent of the Legislature was to relieve taxpayers of certain costs and penalties that had accrued on their delinquent taxes, the fact that certain taxes were not included in the constitutional provision above referred to would not affect the situation. The purpose of the act was to relieve the taxpayers generally and we think it included all taxes assessed against real estate such as the drainage taxes here involved.

The point is made in defendant's brief that the attorney fees here involved were never fixed by any court as required by section 10828, Revised Statutes 1929, and for that reason cannot be recovered. In

view of what has been said we deem it unnecessary to consider that question. It follows that the judgment of the circuit court should be affirmed. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.