MINNESOTA LOAN & TRUST Co., Guardian, *vs.* FRANKLIN BEEBE and others.

January 11, 1889.

Constitution—Trust Company—Power to act as Guardian.—The provisions of Laws 1883, *c.* 107, ("An act to authorize the organization of annuity, safe-deposit, and trust companies,") granting to such corporations power to act as guardians of the estates of insane persons, *held* valid.

The plaintiff, as guardian of Robert Chambers, a lunatic, brought this action in the district court for Hennepin county against the defendants, who are the sureties upon the bond given by a former guardian, to recover moneys of the ward collected by the former guardian and not accounted for. The action was tried by *Young*, J., without a jury, and judgment ordered for plaintiff. Defendants appeal from an order refusing a new trial.

*E. W. Rossman,* for appellants.

*William J. Hahn,* for respondent.

MITCHELL, J.[1]   This is an action by the plaintiff, as guardian of Robert Chambers, an insane person, upon the bond of his former guardian, to recover money due his estate.   The principal question is as to the constitutionality of the provisions of "An act to authorize the organization and incorporation of annuity, safe-deposit, and trust companies," (Laws 1883, *c.* 107, § 9, subd. 4,) granting to such corporations power to act as trustee, assignee, receiver, executor of a will, administrator of an estate, guardian of the person or estate of a minor, or guardian of the *estate* of any lunatic, imbecile, etc., and authorizing any probate or other court to appoint and commission any such corporation, authorized to do business in this state, as such trustee, etc., in all cases where such court could lawfully appoint and commission a natural person; and providing that in such cases no bond, oath, or other qualification should be necessary to enable such corporation to accept such appointment.

The contention of counsel seems to be that the legislature has no right to grant to any corporation the power to act in any such fiduciary capacity.   His argument deals in much criticism and denunciation of the statute, some of which might have some weight if addressed to the legislature, but he entirely fails to point out any provision of the constitution with which it conflicts.   The sum of his argument is that such a statute is in derogation of the common law, or conflicts with prior statutes, and is impolitic.   But none of these considerations go to the question of the validity of the act.   With our preconceived ideas on the subject, it might seem somewhat inappropriate to intrust the person of a minor to the custody of a corporation; but perhaps experience will prove that the objections to this are largely artificial and imaginary.   But this question does not arise in this case.   While the statute authorizes these corporations to act as guardians of both the persons and estates of *minors,* it only authorizes them to act as guardians of the *estates* of insane persons. This action pertains solely to the estate of the ward, and the fact that

[1]Vanderburgh, J., took no part in this decision.

the probate court has assumed to appoint the plaintiff guardian of both his person and estate will not, although unauthorized as to the former, affect the validity of the appointment as guardian of the estate. To the appointment of corporations, organized for that special purpose, under well-guarded statutes, to the position of trustee of a trust, executor of a will, administrator or guardian of an estate, or other place of trust, involving the custody and management of property only, there can be no possible objection on either constitutional grounds or considerations of policy. The common-law grounds upon which it was held that corporations could not act in any of these fiduciary capacities were purely artificial. The reason given by Blackstone why a corporation aggregate could not act as an executor or administrator is that it could not take the necessary oath; but even at common law, in England, this technical difficulty was evaded by the corporation naming an agent, called a "syndic," to whom letters were issued. Moreover, it is, of course, entirely competent for the legislature to dispense altogether with an oath in such cases. Another reason often assigned why a corporation could not act as a trustee was that, as a court of equity often enforced a trust by laying hold of the conscience of the trustee, therefore, inasmuch as a corporation has no conscience, it is not qualified to act as trustee. The reason most commonly given why a corporation could not act as trustee, executor, guardian, or in other such fiduciary capacity, was that such an appointment involved a personal trust, and therefore a corporation lacked one of the essential requisites of a good trustee,—personal confidence. 1 Perry, Trusts, § 42. But at least as to trusts, technically so called, this doctrine has long since been exploded, even at common law, as too artificial. *Vidal* v. *Girard,* 2 How. 127, 187. And there are now numerous instances in which corporations have been expressly empowered by statute to administer estates, and neither the validity nor policy of such legislation has ever before, to our knowledge, been questioned. 1 Mor. Priv. Corp. § 357. In fact, in many of the states, particularly the older ones, this is fast becoming the favorite method of administering estates and executing trusts. The facts that such corporations have perpetuity of existence; that they are less liable than natural persons to sudden fluctuations of

fortune; that, being organized for that special purpose, they can administer estates more efficiently and economically; and that, in case of large estates, it is often difficult to find a natural person who is both able and willing to accept the trust, and give the necessary bonds, —have suggested the necessity and created the demand for such organizations.

The statute is criticised because it does not require the corporation to take an oath or give a bond, as in the case of natural persons. But this is purely a question for the legislature. If they deem the securities deposited with the state auditor, and the other safeguards placed by the statute around the organization and management of such corporations to insure the faithful execution of all trusts imposed upon them, as an equivalent for the bond and oath required of natural persons, they have the undoubted power to so provide.

Other objections are made to these provisions of the act which would not be entitled to notice, except for the earnestness with which they are urged by counsel. For example, it is urged that they amount to legislative interference with the constitutional powers of the probate court, to which is given jurisdiction over the estates of deceased persons and persons under guardianship. It need only be suggested, in answer to this, that the jurisdiction of the courts pertains to the execution of the laws, and not their enactment. This statute neither appoints any guardian or administrator, nor compels the courts to appoint any particular person. It merely provides that a certain class of persons shall be qualified to act in those capacities.

The suggestion that the act is in conflict with section 33, article 4, of the constitution of the state, is equally untenable. This is not a special or private law, giving special or exclusive privileges, immunities, or franchises to a particular corporation, but a general law for the organization of corporations for certain purposes, and defining their powers. There is nothing in the point that these provisions of the act are not specified in its title. They are all germane to the subject there expressed, which is the organization and incorporation of annuity, safe-deposit, and trust companies. This section of the act is but an enumeration of the powers granted to such corporations, and it was never before heard that, in a general law for the organi-

zation of a particular class of corporations, the powers granted to them should be detailed in the title of the act.

The contention that the plaintiff failed to establish a cause of action, because it did not prove the insanity of Chambers or the regularity of the proceedings in the probate court appointing it his guardian, is predicated upon an entire misconception of the *status* and probative force of the records of that court. In a collateral action, the letters themselves are conclusive of the regularity of the proceedings resulting in their issuance, as well as of the insanity of the person upon whose estate they were issued. *Moreland* v. *Lawrence,* 23 Minn. 84; *Pick* v. *Strong,* 26 Minn. 303, (3 N. W. Rep. 697;) *Davis* v. *Hudson,* 29 Minn. 27, (11 N. W. Rep. 136.)

Order affirmed.