# VINCENT KERENS, Appellant, v. ST. LOUIS UNION TRUST COMPANY et al.

In Banc, July 12, 1920.

1. **WILL: Construction: Oral Testimony.** If the language of a will is susceptible of two constructions, evidence of testator's feeling towards a legatee may be admitted which will enable the court to put itself, so far as may be, in the testator's place, that the words used may be read in the light of his environment at the time the will was executed. By the admission of such evidence no violence is done to the rule that a testator's intentions are to be ascertained from the will itself.

2. ———: ———: ———: **Spendthrift Trust: Condition Under Which Created: Precedent or Subsequent.** By his will the testator devised and bequeathed one-third of the residue of his property to a trustee with power to handle and control the same and with specific directions to the trustee to turn over to a son a designated portion of the income during his lifetime, with the condition added that "if, at any time during the lifetime of my said son, he shall of his own free will and desire have passed five consecutive years of continued sobriety and good behavior and shall establish such fact to the satisfaction of said trustee, then the latter, namely, said trustee, shall declare said trust to be at an end and thereafter convey, transfer and pay over to my said son all the trust property and estate then held or possessed by it as such trustee, and such trust shall thereupon terminate." *Held,* that extrinsic evidence showing that the will was made after repeated fruitless efforts by the testator to reclaim said son from his weakness for intoxicating drink, that the demoralizing effect of drunkenness had persisted during the son's young manhood and that he was still less than forty years of age at the time of testator's death, is competent for the purpose of aiding the court to determine whether the condition upon which the trust was created was precedent or subsequent; and where the will further gave the trustee power to sell and reinvest, mortgage or pledge, or to anticipate the income or any installment to be paid the son, and declared that the

son should have no power to dispose of any of the property and that neither the principal nor income should be liable for his debts, present or future, and the trustee's title was to be divested only upon the son's reformation or death, the compliance of the son was a condition precedent to the establishment of his right to the trust property. The son took no estate, but a mere interest in the income, and his interest therein was in the nature of a gift or donation.

3. TRUST ESTATE: Power of Corporation: Devisee. Under the statutes a trust company may hold devised property in trust, execute such trust in conformity to the declared intentions of the trustor or testator, act as executor and trustee, be granted letters testamentary, and generally, act as trustee or in any other fiduciary capacity in the manner provided by law for the appointment of an individual to such office.

4. SPENDTHRIFT TRUST: Power of Corporation to Terminate. Since the law has clothed a trust company with power to exercise the functions of a trustee, including the possession, care, custody and disposition of devised property, it is possessed of the consequent power, within the terms of the will, to determine whether the prescribed condition upon which a spendthrift trust is to terminate has been performed.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

AFFIRMED.

*Boyle & Priest* and *Frank Y. Gladney* for appellant; *Stanchfield & Levy* of counsel.

(1)   The court will resolve every doubt against the construction of the will contended for by the trust company and the remaindermen, for the trust company has completely identified its interest with the conflicting and partisan interest of the remaindermen, and is seeking a construction that will favor the remaindermen's interest, identified with its own. This is proved by the fact that the same counsel represent both the trust company and the remaindermen. Smith v. Jordan, 77 Conn. 473; Gordon v. Green, 113 Mass. 260; Bryant v. McIntosh, 3 Cal. App. 95; Marcom v. Wyatt, 117 N. C. 129; Arrington v. Arrington, 116 N. C. 170; Murray v. Liz-

otte, 31 R. I. 527.    (2)    Where indefiniteness and un-
certainties. ap'pear on the very face of the will, the rule
is absolute, that oral evidence cannot be availed of to
remove or explain it away. Goode v. Goode, 22 Mo. 524;
Davis v. Davis, 8 Mo. 56;   Gregory v. Cowgill, 19 Mo.
415;   Bradley v. Bradley, 24 Mo. 315;   Nichols v. Bos-
well, 103 Mo. 157;   Mersman v. Mersman, 136 Mo. 256;
Meiners v. Meiners, 179 Mo. 625;   Robards v. Brown,
167 Mo. 457;   King v. Ackerman, 67 U. S. 418; Chater
v. Carter, 238 U. S. 584.   (3)   The interposition of a
trust and a trustee does not change the rule of or post-
pone the vesting of the interest. Cornwell v. Orton, 126
Mo. 365-6; Patrick v. Blair, 119 Mo. 113-4;   Simmons v.
Cabanne, 177 Mo. 352;   Deacon v. Trust Co., 271 Mo.
695;   Walter   v. Dickman, 202 S. W. 538;   Croxall v.
Sherrerd, 5 Wall. 281;   1 Perry on Trusts (6 Ed.), sec.
357.   (4)   The devise is to be construed first as if after
the name of the beneficiary there followed the words
"and his heirs and assigns." R. S. 1909, sec. 2870;   Roth
v. Rauschenbusch, 173 Mo. 588.    (5)   The law favors
the heir and he cannot be disinherited upon conjecture.
Wright v. Denn, 10 Wheat, 228;   McCaffery v. Manogue,
196 U. S., 569.   (6)   "Where an estate is given in one
part of an instrument in clear and decisive terms, such
estate cannot be taken away, or cut down by raising a
doubt upon the extent or meaning, or application of a
subsequent clause, or by inference therefrom, nor by any
subsequent words, that are not   as clear and decisive
as the words of the clause giving that estate." Nichols
v. Boswell, 103 Mo. 158; Sevier v. Woodson, 205 Mo. 214;
Jackson v. Littell, 213 Mo. 599; Settle v. Shafer, 229 Mo.
569;   Middleton v. Dudding, 183 S. W. 444;   McArthur
v. Scott, 113 U. S., 381.   That the subsequent inferential
or doubtful part takes the form of a trust makes no
difference in the application of the rule. Cornet v. Cornet,
248 Mo. 221.; Howard v. Howard, 184 S. W. 993.   (7)
Subsequent parts of this will serve to confirm the vesting
effect of the words "give, devise, and bequeath." This
is true of (a)   the so-called spendthrift trust. O'Hare

v. Johnston, 273 Ill. 458; Jones v. Jones, 223 Mo. 442; Taylor v. Mason, 9 Wheat. 351. (b) The clause charging the equitable estate with the payment of an obligation of the beneficiary guaranteed by the testator. King v. Ackerman, 67 U. S. 415. (c) The conduct clause. Collier's Will, 40 Mo. 320, 327; Simmons v. Cabanne, 177 Mo. 347. (8) Wherever it is possible a will will be so construed as not to create a condition, particularly a condition precedent. Deacon v. Trust Co. 271 Mo. 687; Bryan v. Tylor, 129 Md. 150. (9) The condition here is subsequent. Burnham v. Burnham, 79 Wis. 557; Alexander v. Alexander, 156 Mo. 413; Simmons v. Cabanne, 177 Mo. 336; Jones v. Jones, 223 Mo. 445; Finlay v. King's Lessee, 3 Peters, 346; Taylor v. Mason, 9 Wheat. 350. (10) The conduct clause, if construed as an attempt to set up and fix a definite standard of conduct, is void and incapable of enforcement because it is so indefinite and uncertain that the court cannot know from the words of the will what was the true intent of the testator. Board of Trustees v. May, 201 Mo. 370; Reed v. Reed, 39 Mo. App. 477; Schmucker's Estate v. Reed, 61 Mo. 600; Hadley v. Forsee, 203 Mo. 428; Jones v. Jones, 223 Mo. 449-50. (11) The power of the trust company to determine "sobriety and good behavior" and "free will and desire" must be found in the statute. State ex rel. v. Lincoln Trust Co., 144 Mo. 562; Laws 1915, pp. 160-195. (12) The testator cannot enlarge or add to the statutory powers of the trust company. The meaning of the statute, whatever it may be determined to be, was fixed by the Legislature when the enactment was made. Harwood v. Tracy, 118 Mo. 631; Church v. McElhinney, 61 Mo. 543. (13) In construing the statute the court will heed: (a) The general object and purpose of the Legislature. Ross v. Ry. Co., 111 Mo. 26; Pembroke v. Huston, 180 Mo. 636. (b) All the provisions of the statute, to get at the true meaning of any portion. Riddick v. Walsh, 15 Mo. 536; Macke v. Byrd, 131 Mo. 690; State ex rel. v. Harter, 188 Mo. 529; State ex rel. v. Ryan, 232 Mo. 92. (c) That general words

shall be accommodated to the intent, whether general or specific. State ex rel. v. Fry, 186 Mo. 203; Pennington v. Coxe, 2 Cranch, 52. (14) The statute imports at least three distinct characteristics of trust companies and one explicit definition of and limitation upon, the kinds of trusts that they can assume and execute, which, taken together, are decisive of the issue here involved. (a) The corporation is totally wanting in personality: Laws 1915, secs. 144, 141, 142, 157; Chicago T. & T. Co. v. Zinzer, 264 Ill. 31. (b) Financial responsibility (in contrast with the personality of an individual) is made the sole ground or basis for such confidence or trust as the corporation is authorized to assume and execute. Laws 1915, secs. 121, 154-156. And financial accountability is the sole measure of its fidelity. Laws 1915, secs. 129, subd. 9, sec. 131. (c) The corporation is organized solely for pecuniary profit; it is a professional trustee for hire. The trust company differs fundamentally from a benevolent trustee organized under Art. 10, Chap. 33, R. S. 1909. Therefore, it is incapable by the law of its creation from assuming and executing a discretionary power that calls for an unmercenary, non-economical and moral standard of decision, People v. Binghamton Trust Co., 139 N. Y. 192; Constitution, art. 12, sec. 7; Reyburn v. Bakewell, 88 Mo. App. 647. (d) The statute necessarily excludes a testamentary trust or confidence that (a) by the language of its creation, and (b) its intrinsic nature cannot be delegated to a substitute trustee without (a) violating a fundamental principle of equity jurisprudence and (b) defeating the expressed intent of the testator. Bodley v. Taylor, 5 Cranch, 225; State ex rel. v. Dearing, 180 Mo. 64; Arnett v. Williams, 226 Mo. 118-9; Safe Deposit Co. v. Sutro, 75 Md. 365; Hazel v. Hagan, 47 Mo. 281; Bales v. Berry, 51 Mo. 451; Donaldson v. Allen, 182 Mo. 626; Security Co. v. Snow, 70 Conn. 288; Dillingham v. Martin, 61 N. J. Eq. 276; Whitaker v. McDowell, 82 Conn. 195. (15) The intention of the testator, if inconsistent with the law, must give way. Brown v. Rogers, 125 Mo.

398; Harbison v. Swan, 58 Mo. 154; Peugnet v. Berthold, 183 Mo. 64.

*Bryan, Williams & Cave* for respondent.

(1) In the construction of ambiguous—or alleged ambiguous—expressions in a will, the situation of the parties may very properly and should be taken into view. And this is true even though the only question is as to the extent of the estate given a particular beneficiary. And oral testimony is admissible to show that situation. Smith v. Bell, 6 Peters, 68; Webb v. Hayden, 166 Mo. 46; Cornet v. Cornet, 248 Mo. 216; Robards v. Brown, 167 Mo. 457. Few cases of will construction can be found in which the courts have not set out, and taken into view, the environment of the testator in attempting to gain his meaning. Schneider v. Kloepple, 193 S. W. 835. (2) The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail. Smith v. Bell, 6 Peters, 68; R. S. 1909, sec. 583; Graham v. More, 189 S. W. 1186. And this intent is to be gathered from the four corners of the will. McCaffery v. Monogue, 196 U. S. 569. (3) "An estate granted in one clause of the will may be cut down to a lesser estate by an express provision to that effect or by words so strong and clear as to have that effect by plain and necessary implication." Cox v. Jones, 229 Mo. 53; Schneider v. Kloepple, 193 S. W. 835; Gibson v. Gibson, 239 Mo. 491. (4) The policy of the law in favor of the heir yields to the intention of the testator clearly expressed or manifested. McCaffery v. Monogue, 196 U. S. 569. (5) This will, made under the existing conditions, read as a whole, clearly bespeaks the fact that the condition as to five years' sobriety by Vincent was intended by the testator as a condition precedent both as to possession and title. Graham v. More, 189 S. W. 1186; Jarboe v. Heye, 122 Mo. 341; McPike v. McPike, 181 S. W. 2; Partridges v. Cavender, 96 Mo. 352; Re Estate of Mary C. Jones, 48 L. R. A. (Mich.), 580;

Abend v. McKendree College, 174 Ill. 96; French v. Northern Trust Co., 197 Ill. 30; West v. Moore, 37 Miss. 114; Starck v. Conde, 100 Wis. 633; Hawke v. Euyart, 30 Neb. 149; Reuff v. Coleman, 30 W. Va. 171; Gunning's Estate, 234 Pa. St. 139; Bowman v. Long, 23 Ga. 242; Tattersall v. Howell, 2 Merv. 25; Perry on Trusts, par. 508; L. R. A. 1915 C, 1016, note. (6) The condition here leaving the question of sobriety, good behavior, free will and desire, etc., to the opinion, discretion or satisfaction of the named trustee, and authorizing the trustee to decide when the conditions had been performed, is neither indefinite nor uncertain. Jones v. Jones, 223 Mo. 450. (7) Even were the condition so indefinite as to be unenforceable, it being a condition precedent, the plaintiff could take no estate whatever. But the condition is definite and certain. (8) The Trust Company has full power and capacity to act as trustee in a trust requiring the exercise of discretion. There are no known lines of demarcation between different kinds of discretion, and none can be drawn. Laws 1915, pp. 165-6-8; 10 Cyc. 1125; 39 Cyc. 247; Clark & Marshall, secs. 149-150; Thompson on Corporations, sec. 2374; Perry on Trusts, secs. 42, 43, 44; White v. Rice, 112 Mich. 408; Minnesota Loan & T. Co. v. Beebe, 40 Minn. 7; Union Bank & T. Co. v. Wright, 58 S. W. 755; Chamber v. St. Louis, 29 Mo. 57; Vidal v. Girard's Exrs., 43 U. S. 73.

WALKER, C. J.—This is a suit to construe the will of Richard C. Kerens and the statute conferring power upon trust companies to execute trusts of this character.

The testator was a resident of the City of St. Louis and executed the will April 10, 1916, and died in the following September. In said will the testator named as executor and trustee the St. Louis Union Trust Company. The suit is brought by Vincent Kerens, a son of the testator against the trust company as trustee and the legatees and devisees other than the plaintiff. The trial court sustained the trust created by the will and the plaintiff has appealed. We are concerned only

with such portions of paragraph 12 of said will having reference to the matter at issue.

The introductory section to said paragraph 12 is as follows:

"All the rest, residue and remainder of my estate, real, personal. or mixed, of every description and wheresoever situate, of which I may die seized or possessed, or to which I may be entitled at the time of my death, together with all lapsed legacies and any and all property becoming a part of my residuary estate under the provisions of this my last will, the whole being referred to as my 'residuary estate,' shall be divided by my executor into three equal parts or portions, one of which I hereby give, devise and bequeath unto my daughter, Madeline Kerens Kenna; another of which I give, devise and bequeath unto my daughter, Gladys Kerens Colket; and the remaining one-third to the said St. Louis Union Trust Company, as trustee, for my son, Vincent Kerens, to have and to hold the same, for the uses and purposes upon the terms and conditions, and with the powers and duties hereinafter set forth."

Subdivision "a" of said paragraph 12 provides for the management by the trustee of the estate.

Subdivision "b" defines more fully the powers of the trustee.

Subdivisions "c," "d" and "e" are in the following language:

"(c) During the lifetime of my said son Vincent or if said trust shall not be sooner terminated by the trustee pursuant to the power hereinafter conferred upon it, during the life of said trust said trustee shall pay to him out of the net income accruing from said estate the sum of five hundred dollars on the first of each calendar month succeeding the time of my death and the remaining undistributed income it shall reinvest and hold as part of the *corpus* or principal of said trust estate subject to all the provisions of this Twelfth Clause of my will. If, at any time during the lifetime of my said son, he shall of his own free will and desire

have passed five consecutive years of continued sobriety and good behavior and shall establish such fact by proof to the satisfaction of said trustee, then the latter, namely, said trustee, shall declare said trust to be at an end and thereafter convey, transfer and pay over to my said son Vincent all the trust property and estate then held or possessed by it as such trustee, and said trust shall thereupon be terminated.

"If at any time or times on account of serious illness or other unforeseen emergency, my said son shall, in the opinion of said trustee, imperatively require the expenditure upon him or for his benefit of part of the accumulated and undistributed income or of the principal, said trustee is hereby authorized to appropriate and expend for such purpose such an amount as it may think necessary under the circumstances; provided, however, that whereas during my lifetime I became guarantor of the payment to my daughter-in-law, Jane H. Kerens, during her lifetime, or until her remarriage after his death, of the sum of four hundred and fifty dollars per month by her husband, my said son Vincent, I direct that if my said son shall fail to make to his said wife any of said monthly payments, or any part thereof, during the existence of this trust, said trustee shall pay out of such net income, before making the payment of five hundred dollars per month to my said son, all said monthly stipends to his said wife which at the time may be due and unpaid, his right to receive his monthly stipend of five hundred dollars out of said net income being subject to the prior payment of over-due instalments to his said wife as aforesaid; and provided further, that if my daughter-in-law shall prove against my estate or otherwise establish as a charge against the same her claim under her said agreement of which I am guarantor as aforesaid, the principal of the fund hereinabove devised and bequeathed in trust for my said son shall be charged with the satisfaction of such claim until provision shall have been made for its payment or its release so that my estate generally shall not be charged

with the payment of the same or any part thereof. And said trustee is hereby authorized, if such a contingency should arise, to use such part of said trust estate as may be necessary to procure the release or satisfaction of said claim of my said daughter-in-law.

"(d). It is my will, and I direct, that neither the income from said trust estate, hereby provided for said beneficiary, nor the principal fund, shall be liable for his debts, present or future, and shall not be subject to the right on the part of any creditor to seize or reach the same under any writ or by any proceeding at law or in equity. And said beneficiary shall not have any power to give, grant, sell, convey, mortgage, pledge or otherwise dispose of, encumber or anticipate the income, or any instalment thereof, or any share in the principal thereof, it being my will that no right of disposition of any such property shall vest in said beneficiary until the same shall have been actually transferred or paid over to him.

"(e). At the death of my said son, if said trust shall not have been terminated as authorized in paragraph (c) hereof, all the trust property and estate in the hands of said trustee shall be distributed and turned over to my two daughters, Madeline Kerens Kenna and Gladys Kerens Colket, and to the descendants of either or both of them who shall have then died leaving any descendant or descendants surviving, in equal shares per stirpes."

Relevant testimony necessary to an understanding of the facts and the determination of the cause will be set forth in the opinion as occasion requires.

The assignment of errors is as follows:

1. The court erred in admitting testimony explanatory of the meaning of the will and in permitting the respondents to vary its meaning by extrinsic evidence.

2. The court erred in not holding that the will vested in the appellant the equitable title to one-third of the residuary estate.

3. The court erred in holding that the conditions named were definite, certain and capable of enforcement.

4. The court erred in refusing to hold that the conditions were subsequent and so vague and indefinite as to be incapable of administration.

5. The court erred in refusing to hold that the trustee had no power under the will or by law to determine the conditions attempted to be imposed and no authority to withhold the estate from appellant until he shall comply with such conditions or deprive him of said property if he shall fail to comply with the conditions of the will as by it interpreted.

6. The court erred in refusing to hold that under the will and the law the appellant is entitled to immediate possession of said equitable estate and that the remainderman are entitled to no interest therein.

These in their order.

I. As a general proposition a testator's meaning is to be determined by his will alone and from this we must ascertain his intent, but if it is found that the language is susceptible of two constructions, evidence of the testator's feelings towards plaintiff may be admitted which will enable the court to put itself, so far as may be, in the testator's place, that the words used may be read in the light of his environment at the time the will was executed. [Tisdale v. Prather, 210 Mo. l. c. 408; Whitelaw v. Rodney, 212 Mo. l. c. 548; Tebow v. Dougherty, 205 Mo. l. c. 320; Bd. of Trustees v. May, 201 Mo. l. c. 369.]

*Oral Testimony.*

If the terms employed are, therefore, unambiguous they will define themselves and the admission of outside facts will be unnecessary. Otherwise such evidence is admissible as will more clearly disclose the situation of the parties. For example, the admission of extrinsic evidence was deemed necessary to determine the estate created, whether it was a fee or a spendthrift trust (Cornet v. Cornet, 248 Mo. l. c. 216), or to designate with certainty the beneficiary (Schneider v. Kloepple,

193 S. W. l. c. 836); or to determine whether the testator intended to create a condition precedent or subsequent (Meiners v. Meiners, 179 Mo. l. c. 625); or whether an absolute legacy or one in trust was intended (Webb v. Hayden, 166 Mo. l. c. 46); or to render clear ambiguous expressions, determine the ties connecting the testator with the legatees, or the affection existing between them, and the motives which may reasonably be supposed to have influenced the testator in the disposition of his property (McMahan v. Hubbard, 217 Mo. 624; Smith v. Bell, 6 Pet. l. c. 68). The admission of oral testimony as thus authorized does no violence to the rule that a testator's intentions are to be determined from the will itself—the purpose of the admission being that the court may be enabled as near as possible to put itself in the place of the testator at the time he made the bequests, and thus view his acts as of the time when and under the circumstances, then existing.

The statute (Sec. 583, R. S. 1909) which enjoins courts to have a due regard to the directions of wills and the true intent and meaning of testators, is aided, not militated against, by the admission of testimony of the character here under review. If doubt exists from the terms of a will as to the testator's purpose, in what other manner than by the admission of extrinsic testimony can that purpose or his true intent and meaning be ascertained and the directions of the will intelligently interpreted? We are, therefore, of the opinion that there was no error in the admission of the extrinsic testimony herein. In thus ruling we do not minimize the force of the old English maxim that the testator's intention is to be regarded as the pole star in directing the court in the construction of a will (Gulliver v. Poyntz, 2 Wils. 141). Added radiance is given to the luminary thus defined by the admission of the oral testimony and the court's course more clearly indicated.

II. An interpretation of the will according to its terms, aided by such extrinsic testimony as may be necessary to enable us to view it from the vantage of

the testator, necessitates a determination of the question whether the condition under which the trust was created is to be construed as precedent or subsequent. The will was after repeated fruitless efforts on the part of the testator to reclaim the plaintiff from his weakness for drink and the demoralizing effects of drunkenness. This form of dissipation, with the consequent dependent condition of the plaintiff upon the bounty of his father, had persisted during the young manhood of the plaintiff, who was still within the thirties at the time of the former's death. We are concerned with this phase of the case only so far as it may aid in construction. While the terms of the will are sufficiently definite to determine the testator's intention in the creation of the trust, the motive which moved this intention and the purpose thereby sought to be effected cannot but be illuminated by evidence of the plaintiff's delinquency and the testator's knowledge of same extending over a period of years. Armed with this knowledge, uncertain on account of frequent disappointments, yet hoping that in the fulness of time the plaintiff might reform, the testator created the trust, named the trustee, directed that it be placed in possession of the portion of his estate designated and defined its powers. His purpose was to place the principal of same beyond the prodigal and elastic grasp of the plaintiff, who, up to that time had never been capable of maintaining himself; and to provide with the income arising therefrom a certain support for the plaintiff during his life. With that flickering spark of hope which oftentimes fitfully glows in a parent's heart long after it has become dead, cold ashes elsewhere, the testator further provided that if plaintiff should at any time, of his own free will and desire, have passed five consecutive years of continued sobriety and good behavior and should establish such fact to the satisfaction of the trustee, then the trust should terminate and the estate be turned over to him.

The conclusions deducible from the terms of this trust are the right of the trustee to the custody of the

*The Will Construed.*

body of the estate, its continued possession of same with power, as directed, of disposing of the income there-from subject to the termination of the trust. Without these powers the trust would be incapable of execution and the purpose of the testator would be utterly defeated. A trust incapable of execution under its own terms is futile. This cannot be so classified. The power it confers is ample for the purpose contemplated. Active in its nature, it panoplies the trustee under subdivisions "a" and "b" of the will—which we have not heretofore set out at length—with power to hold and manage the interest devised during the existence of the trust, to pay taxes and other charges against the property and all legal and proper expenses incident to its care and protection and such other expenses as may be connected with the execution of the trust; to invest cash forming part of the principal, lend same upon approved security or expend it in the purchase of personal or real property; and to sell any part or parts of said estate in such manner, at such times and places, and for such consideration as it may approve; to lease or rent any part of the real property belonging to said trust estate on such terms or conditions as it may approve; to borrow money and secure its payment by mortgages or pledges of the personal or real property of said estate whenever and as often as in the opinion of the trustee said actions will be conducive to the interests of the estate; to make and carry out any agreement with any person or persons for a sale, division or distribution of any property said trustee may hold or own in common with such other person or persons; and in the execution of any of the powers enumerated to make and execute deeds, leases, mortgages, conveyances or other instruments deemed by said trustee necessary and appropriate to such end or ends.

The foregoing provisions declaratory of the status and powers of the trustee, together with other pertinent portions of the will, when given their plain ordinary meaning are of controlling importance in determining the

testator's intention.  [Deacon v. Trust Co., 271 Mo. 669, 197 S. W. 261.]

In the presence of the powers thus conferred, which are as comprehensive and absolute as can be expressed in words, considering the nature of the subject and the purpose contemplated, there is nothing left in the estate to which the plaintiff can, under existing conditions, make a claim except the specified legacy of $500 per month. That this is the definitive limit of his claim upon the estate is evident from subdivision "d" supra of the will, which, supplementing the provision in regard to the allowance to the plaintiff provided for in subdivision "c" supra, directs that neither the income from the trust estate nor the principal shall be liable for plaintiff's debts, present or future, nor subject to the right of any of plaintiff's creditors; nor shall he have the power to give, grant, sell, convey, mortgage, pledge or otherwise dispose of, encumber or anticipate the income, or any instalment thereof, or any share of the principal, it being, as the testator further provides, his will that no right of disposition of any of such property shall vest in plaintiff until the same shall have been actually transferred or paid over to him.  By which last clause is meant that he shall, as is evident from not only the purport but the tenor of the trust, have complied with the condition explicitly prescribed by the testator.

From the foregoing provisions these deductions follow: that there was created a trust estate; that the title to same was invested in the trustee; that this title carried with it the right in the trustee to the possession of the property and its care, control and domination, subject only to the limitations of the trust; that this title was to be divested only upon two grounds, one, the conduct of the plaintiff, and the other his death.

The investiture of the title thus being complete and absolute for the purpose prescribed, nothing was left upon which an interest of the plaintiff therein could be based, his allowance being clearly in the nature of a gift or a donation.  The certainty of payment and

continuance of duration of this gift did not in any wise change its nature. In order, therefore, for the plaintiff to acquire an interest in the estate it was necessary for him to comply with the terms of the trust, such compliance being a condition precedent to the establishment of his right. Absent such compliance and no estate could vest in him. To rule otherwise would be to ignore the elementary meaning of a condition precedent, which the texts tell us is one which must be fulfilled before the estate or interest can vest.

In reaching this conclusion we are not unmindful of the well settled rule frequently recognized in this jurisdiction, from the Collier's Will case, 40 Mo. 322, to that of Deacon v. Trust Co., supra, that wherever it is possible, with a proper regard for the evident purpose of the trust, such a construction will be given a will as to obviate the creation of an estate subject to a condition, particularly a condition precedent. But where, as in the instant case, it is evident that it was the testator's intention to create an estate of this character, no other alternative is left but to so declare.

This will differs in no wise, except in the particular terms employed, from many others which have received judicial interpretation; and, while it is true, as was said in Gulliver v. Poyntz, supra, that "unless a case be cited directly in point and agree in every circumstance it will have little or no weight with the court," the rulings upon what constitutes a condition precedent in cases of this character are sufficiently similar in their controling facts to justify their citation as precedents.

In Jarboe v. Hey, 122 Mo. 341, the reformation of a profligate son was made a condition of his taking an interest in his father's estate—such reformation, as in the case at bar, to be determined by the trustee. In construing the will we held that this constituted a condition precedent a compliance with which was prerequisite to the vesting of the estate. This ruling has never been questioned, but on the contrary, wherever the

tenor of a devise is of like import, it has been approved. [McPike v. McPike, 181 S. W. l. c. 7.]

In Markham v. Hufford, 123 Mich. 505, the condition of a legacy was that it was to be paid to the legatee, if at the expiration of two years from date of the demise of the testatrix the legatee shall in the judgment of the executors be deemed a reformed man. The court, in construing the will, held that it was the evident intention of the testatrix that the legatee should not have the legacy unless within two years after her death he should change his course of conduct; and she selected persons in whom she had confidence to determine the question at the proper time. It was left to their judgment and the inference is they knew the legatee's faults. Unless at that time the executors should determine that he was a reformed man the provision would be inoperative. It was unnecessary for the testatrix to make a record of the legatee's faults. It is a valid condition to require the reform of bad habits. [Citing Dustan v. Dustan, 41 Paige, 509; Webster v. Morris, 66 Wis. 366.] The court further held that a condition which involves anything in the nature of a consideration is, in general, a condition precedent. In reaching this conclusion the concise definition of a conditional legacy from 2 Williams on Executors (7 Am. Ed.), 558, was quoted, to the effect that "it is one the existence of which depends upon the happening, or not happening, of some uncertain event, by which it is either to take place or be defeated. No precise form of words is necessary in order to create a condition in a will, but whenever it appears that it was the testator's intent to make a condition, that intent shall be carried into effect."

Of a like tenor and, if possible, more particularly applicable to the case at bar, is the ruling of the Supreme Court of the United States in Finlay v. King's Lessee, 3 Pet. 346, in which the court said, at page 374:

"It is certainly well settled that there are no technical appropriate words which always determine whether a devise be on a condition precedent or subsequent.

The same words have been determined differently, and the question is always a question of intention. If the language of the particular clause, or of the whole will, shows that the act on which the estate depends, must be performed before the estate can vest, the condition is, of course, precedent; and unless it be performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it—if this is to be collected from the whole will—the condition is subsequent."

In addition, the curious will find in Markham v. Hufford, supra, a compilation of rulings of courts of last resort as to what constitutes under the different facts stated a condition precedent. It is not deemed necessary to burden this opinion with their particular citation.

In Webster v. Morris, 66 Wis. 366, the testator made a bequest to a grandson the income of which was to be used for his support until a certain age, when the principal sum was to be paid to him, "provided he has in the meantime learned some useful trade, business or profession and is of good moral character;" and the executors were to determine whether he had complied with this proviso. It was held that this condition was not indefinite, uncertain or contrary to good morals or public policy and was valid. This on the theory that every person has a legal right to dispose of his own property as he sees fit. The court, in holding the condition to be valid and its performance necessary before the principal sum could be paid to the grandson, cited a large number of cases, English and American, in support of its conclusion.

In Brennan v. Brennan, 185 Mass. 560, a testatrix devised and bequeathed all of the residue of her estate to one of several heirs at law, "to him and his heirs forever, provided that he shall take care of me and look after me while I live." The person named as devisee had no knowledge of this provision of the will until after the death of the testatrix and had not performed the requirements of the clause. *Held* that

the devise was not a fee simple, but one upon a condition precedent to be performed during the lifetime of the testatrix and that the devisee's lack of knowledge of the will until after the death of the testatrix was immaterial as affecting the nature of the devise.

In Abend v. McKendree College, 174 Ill. 96, the testator had an insane son. In his will the testator created a trust fund and provided that the trustees should use the income and such portion of the principal as in the discretion of the trustees might be deemed necessary for the maintenance of the son. The will contained this further proviso: "And in case my said son James shall recover from his unfortunate condition and become of sound mind, I direct that the above named sum, so increased or diminished, as the case may be, shall be by the above named trustees paid over to the said James, and in case my said son James shall never recover the use of his reason, then I direct that the said trustee shall, at his death, pay over the above named sum, so increased or diminished, to the Commissioners of the Endowment Fund of McKendree College." The son died insane and a controversy arose between the trustees and the commissioners of the college as to the right to the fund. The court held that under the will the son took no estate but a mere interest in the income and that no estate vested in the absence of the happening of the condition precedent, to-wit, his return to sanity.

Respondent's brief contains references to many other cases of like effect to the foregoing. Their citation here can serve no purpose except to unduly lengthen this opinion. The hallmark of interpretation in all of them, as repeatedly stated, is the intention of the testator as determined from the language of the particular will. Applying this test here we find the words employed susceptible of no other reasonable construction than that the testator intended to create a condition a compliance with which was an essential prerequisite to the vesting of an estate in the plaintiff. A

review of analogous cases has but tended to strengthen this conclusion.

III.  It is contended that the trustee, being a corporation, has no power to execute this trust.  For the measure of its corporate powers we must look to the .act of its' creation, found in Article III, Laws 1915, pp. 160-195.  We make special reference to such portions of said act as have a material relevance to the matter in controversy, as follows:  In Subdivision 4, sec. 127, p. 166, of same, it is provided that a trust company may take, accept and hold by devise or bequest any real or personal property in trust and to execute and perform any and all such legal and lawful trusts in regard to same upon the terms, conditions, limitations and restrictions, declared, imposed, established or agreed upon in and by such devise or bequest; and under Subdivision 9 of said Section 127 it is provided that such company may act as executor and trustee under the last will of the estate of any deceased person;  and under the initial paragraph of Section 129, p. 168, of said act, upon a trust company having been nominated as executor of the last will of a deceased person letters testamentary are required to be granted to it; and under Subdivision 3 of said Section 129 it is provided that a trust company may be appointed and empowered to act as a trustee or in any other fiduciary capacity in the manner now provided by law for the appointment of individuals to any such office.  A resume of these powers as defined by statute may aid in a readier comprehension of their nature and extent.  Under them a trust company may hold devised property in trust, and execute such trust in conformity with the declared intentions of the trustor or testator; act as executor and trustee; have letters testamentary granted to it;  and, generally, act as trustee or in any other fiduciary capacity, in the manner now provided by law for the appointment of individuals to any such office.

*Power of the Trustee.*

The authority thus conferred is explicit; it is in harmony with the purpose for which the trust company was created; it contravenes no law, organic or statutory; and is not against public policy. The trust created is well within these powers and hence the established rule of construction to which we gave affirmative recognition in State ex inf. Crow v. Lincoln Trust Co., 144 Mo. 562, in regard to the limit of the exercise of corporate powers, is not violated.

The only question remaining for determination is whether in the performance of the trust the company has such an implied power, arising by necessary implication from that expressly granted, as will enable it to exercise the judgment of a natural person in determining, if occasion arises, whether the plaintiff has complied with the conditions which will entitle him to the estate.

The incertitude of an officer of the trust company in declining to reply definitely to an inqury of counsel for plaintiff as to the quantum of proof that would be required to entitle the plaintiff to the estate, coupled with that officer's unnecessary conclusion that one committee on estates of the trust company might find differently from another, constitutes no reason, by analogy or otherwise, to sustain the conclusion that the implied power does not arise by necessary implication out of that expressed. Such an argument may properly be directed against the wisdom of naming a corporate trustee in a case of this character, rather than a natural person, but it can serve in no wise to define the limits of the trustee's implied powers, which, under our statute are the same in an artificial as in a natural person, in that powers implied must be determined by a reasonable deduction from those expressed, construed with a view to the performance of the purpose of the trust. [Laws 1915, p. 165 et seq.; Chambers v. St. Louis, 29 Mo. l. c. 577; Thompson, Corporations, sec. 2374; Clark & Marshall, sec. 1490.]

If, therefore, it appears that the exercise of the implied power is essential to effect the clearly defined

purpose of the testator—in this case the determination of the character of plaintiff's conduct—then it should be held that such implied power arises by necessary implication out of that expressed. In the absence of such a construction the intention of the testator would in this case be defeated and the purpose of the trust as a consequence destroyed. It is contended that the right to determine the condition in question can only be exercised by a natural person—in other words, that the judgment necessary to the proper performance of a trust of this character cannot be satisfactorily exercised by a corporation. This, it will be found, is a distinction more artificial and imaginary than real. An examination of the authorities justifies the conclusion heretofore reached, and as having been sustained by our statute, that a corporation with legal capacity to hold property may take and hold it in trust when authorized by law in the same manner and to the same extent as a private person. [White v. Rice, 112 Mich. l. c. 408; Union Bank & Tr. Co. v. Wright, 58 S. W. 755; Minn. L. & Tr. Co. v. Beebe, 40 Minn. 7.] From this it follows that when the law has clothed a corporation with power to exercise the functions of a trustee, including the possession, care, custody and disposition of property and has prescribed the condition upon which the trust shall terminate, it cannot be said with any degree of reason that it is not possessed of the consequent power, within the terms of the trust, to determine whether the prescribed condition has been performed and the trust terminated. A statute should always be construed so as to effectuate the purpose of its enactment. To accomplish this end, the meaning of words may, with a proper regard for the object to be attained, be restricted and at other times extended. Neither course is necessary in the case at bar. The provisions of the statute are plain and unequivocal and they confer ample power upon the trust company to execute the trust; and the definite terms of the latter leave no doubt as to the purpose contemplated by the testator and the extent of the power he intended to con-

fer on the trustee. Under this state of facts it cannot be otherwise reasonably concluded than that, in addition to the express power conferred on the trustee, it is clothed by necessary implication with such added power as will enable it to intelligently determine, upon the submission of proof by the plaintiff, whether his conduct has been such as to authorize the turning over of the estate to him and thus terminate the trust. We examined with some degree of care the cases cited and discussed by counsel for the plaintiff in opposition to. the conclusions we have reached herein, but do not find, upon a comparison of the facts in such cases with those at bar, any sufficient reasons to hold otherwise than we have indicated. From all of which it follows that the judgment of the trial court should be affirmed and it is so ordered. All concur except *Graves, J.,* who dissents from paragraph 3 and result; *Woodson, J.,* absent.