### COLKET et al. v. ST. LOUIS UNION TRUST CO. et al. *
#### No. 9162.

Circuit Court of Appeals, Eighth Circuit.
Sept. 3, 1931.

Robert J. Keefe and Fred L. Williams, both of St. Louis, Mo. (William L. Igoe, Xenophon P. Wilfley, and Earl F. Nelson, all of St. Louis, Mo., on the brief), for appellants.

Henry Davis, of St. Louis, Mo. (P. Taylor Bryan, Thomas S. McPheeters, and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the brief), for appellee St. Louis Union Trust Co.

Arnold Just and Jesse McDonald, both of St. Louis, Mo., for appellee Vincent Kerens.

Before STONE and GARDNER, Circuit Judges, and YOUMANS, District Judge.

STONE, Circuit Judge.

Richard C. Kerens, of St. Louis, died September 24, 1916, leaving a large estate controlled by a will. A portion of that estate was left in trust with appellee St. Louis Union Trust Company, which was to pay his son Vincent Kerens $500 a month until his death or the termination of the trust in another manner hereinafter quoted. If the trust were not terminated before the death of Vincent, the property therein was then to be turned over by the trustee to his two sisters, the appellants herein. Except by the death of Vincent, the trust could be terminated only in the manner following: "If, at any time during the lifetime of my said son, he shall of his own free will and desire have passed five consecutive years of continued sobriety and good behavior and shall establish such fact by proof to the satisfaction of said trustee, then the latter, namely said trustee, shall declare said trust to be at an end and thereafter convey, transfer and pay over to my said son Vincent all the trust property and estate then held or possessed by it as such trustee, and said trust shall thereupon be terminated."

On January 24, 1928, Vincent filed an application with the trustee to terminate the trust under the above-quoted provision, and upon May 29th, following, the trust company, through its board of directors, determined that he had complied with this provision and was entitled to receive the property. Having good reason to believe that appellants would challenge this determination and would seek to hold it financially responsible if it terminated the trust and turned the property over to Vincent, the trust company filed this action for its protection, praying the court for instructions and authority to pay over the corpus of the trust and for other related relief. It made Vincent, a former wife, their daughter, and the two sisters parties defendant. After hearing on the merits, the trial court entered a decree supporting the determination of the trustee, and this appeal is brought by the sisters therefrom.

Appellants present here two matters: The first is that the decree is erroneous because the evidence shows the trustee acted arbitrarily, and, in a legal sense, fraudulently, in reaching its determination that Vincent had complied with the requirements of the will; and, second, that the court erroneously denied applications of appellants for an allowance out of this trust estate for their expenses and solicitor fees in this litigation.

I. The testator had a right to place in the trust company the power to determine when Vincent "of his own free will and desire have passed five consecutive years of continued sobriety and good behavior." Kerens v. St. Louis Union Trust Co., 283 Mo. 601, 223 S. W. 645, 646, 11 A. L. R. 288. Such determination by it is final unless such action is arbitrary. This limitation is merely one requiring good faith in the exercise of such power. Good faith requires an honest effort to ascertain the facts upon which its exercise must rest and an honest determination from such ascertained facts. The inquiry here is, therefore, whether this trustee honestly endeavored to ascertain the facts concerning the sobriety and good behavior of Vincent and whether it honestly determined the matter upon such information as it had at the time that determination was made. If it did, there is no room for disturbing its conclusion, because some one else might have made a more searching inquiry or might have thought the ascertained facts required a different result. But if it knew of matters concerning which honesty would require investigation, and failed to act, or if it knew of matters which would honestly compel a given determination and it announced to the contrary, it cannot, in law, be regarded as having exercised good faith, and its action would be arbitrary.

There is a slight divergence as to the time intended to be covered in this five-year period, the divergence being of importance only because of one piece of evidence. The application which Vincent filed with the trust company seems to set the five-year period as beginning January 1, 1923, and ending December 31, 1927, in one part thereof, but an expression in the opening paragraph of that application seems definite that his intention was to bring forward the five-year period so that it would end on the day the application was presented to the trust company, which was January 24, 1928. Therefore we treat the period involved as beginning January 24, 1923, and ending January 24, 1928.

To understand the situation, and, therefore, the duty of the trust company in that situation, it is necessary to trace the history of its knowledge of Vincent Kerens, which

is as follows: From early manhood, he had been heavily addicted to intoxicants to the point where the president of the trust company describes him as "a drunkard." He had never engaged in any useful occupation but lived upon the bounty of his father. Repeated attempts of his father to reform him were unsuccessful, and it was because of this situation that the property his father intended might go to him was placed in trust, his income therefrom made relatively small, and the inducement to reform inserted in the above-quoted provision from the will. When his father died, Vincent was about thirty-nine years old and had shown no signs of reformation. Very shortly after the will was probated, Vincent brought a suit in the state court to defeat its provisions in so far as they kept the trust property from him. This suit has been termed one to "construe" the will, but that is merely a soft and velvety term for the real purpose and intent. The only purpose and intent was to defeat that part of the will and to secure the trust property absolutely for himself. This action was successfully defended by the trust company, and the Supreme Court of Missouri sustained this portion of the will (Vincent Kerens v. St. Louis Union Trust Co., 283 Mo. 601, 223 S. W. 645, 11 A. L. R. 288) on July 12, 1920. His next move was to file an application, very shortly after the first five-year period following his father's death, in which he claimed to have complied with the requirement of the will as to sobriety and good behavior. In 1921, he filed a second application, in 1922, a third, and on January 17, 1923, a fourth application. All of these applications were consolidated and determined adversely to him by the trust company on May 21, 1925. Some, at least, of these applications were supported by letters and affidavits relating to his conduct during the periods covered. It is rather apparent that a moving, if not the determining, reason for the denial of these applications was something which occurred at Los Angeles in 1920, and the resulting conduct of Vincent in reference thereto in connection with his applications, and other conduct at the Statler and Terminal Hotels in St. Louis in 1922. About April 16, 1920, defendant was arrested in the Woodward Hotel at Los Angeles and a Mrs. Mae Linn was arrested at the same time. They were in adjoining hotel rooms and the charge was that Kerens had brought Mrs. Linn from El Paso for immoral purposes. They were held in the station overnight, but after conference of the police officers with the United States attorney were released without prosecution. On January 14, 1922, Vincent was found in the room of Mrs. Linn at the Statler Hotel in St. Louis, their rooms being a short distance apart on the same floor. There was evidence that Kerens had been drinking at that time. It was also reported to the trustee that there was information of Kerens and Mrs. Linn occupying adjoining rooms at the Terminal Hotel in St. Louis about two weeks prior to the Statler Hotel incident. Knowing that the trust company had information of the Los Angeles matter and of the Statler Hotel matter, Vincent filed affidavits intended to meet those situations. As to the Statler matter, he filed the affidavits of himself and Mrs. Linn to the effect that at the time he was found in her room at that hotel, he had gone there with another man merely for a visit to her, an old friend, whom he had found was stopping at the hotel. As to the Los Angeles incident, he filed his own affidavit and an affidavit of Mrs. R. E. Gara. These affidavits were filed, upon January 17, 1923, in support of his then pending applications. These affidavits were filed only a week before the beginning of the five-year period now under consideration, but their effect is brought into that period by a sworn statement presented to the trustee on July 13, 1923, by Kerens. In that sworn statement was made an answer to comments upon this incident by the investigator for the trust company, and affiant strongly insisted therein that the trustee should believe the above affidavits as to what occurred rather than to consider the fact that no redress for this alleged outrage was sought by Kerens or the woman. Thus, at this later date, he is insisting that the trustee shall accept those two affidavits as representing the truth, and that insistence is fortified by his oath thereto. Thereafter, the trust company employed a detective agency to specially investigate that incident. The result of this investigation was to show, beyond any doubt, that these affidavits were false and this fact was admitted on the trial below, and the trustee was convinced of such falsity. A part of the proof thereof was another affidavit by Mrs. Gara to the effect that she was not the woman arrested at all, but that Mae Linn had befriended her and was an acquaintance, and that Mrs. Linn had asked her to make an affidavit in connection with the settlement of the estate of Mrs. Linn's husband, and that when Mrs. Gara signed the affidavit, filed by Vincent with the trustee, she did so without reading it and supposing that it was as rep-

resented to her by Mrs. Linn. An attempt was made to extenuate this conduct in presenting these false affidavits on the ground that Vincent wished to protect the name of Mrs. Linn, whom he subsequently married, but whom he had not married at the time he presented these false affidavits. This is as flimsy as cobweb, the obvious purpose was to deceive the trustee because the trustee had information of his being in the company of Mrs. Linn at the Statler and Terminal Hotels at St. Louis and it would throw a very unfavorable light upon the Los Angeles transaction if she were a party thereto.

Several years before the death of his father, Vincent had separated from his wife, Jane Kerens, and they were living apart under an agreement whereby she received $450 a month for the support of herself and their daughter. She was living at an address in New York and Kerens knew of her whereabouts. On March 20, 1924, in Dallas county, Tex., he filed a suit for divorce upon the ground of desertion and secured service by publication in a small newspaper at Garden City. Upon May 13th, following, a divorce was procured. In such proceedings under the law of Texas, it appears that a statement of the case is required to be made up and filed as a part of the record therein. In that statement it appears that Kerens testified that he had made a home for Mrs. Kerens in California after he returned from the World War, but that she refused to come and live with him and had announced her intention never to live with him again. About a week after the divorce, he married Mrs. Mae Linn. About March 11, 1926, the former Mrs. Kerens filed a motion in the Texas court to set aside the decree of divorce on the ground that it had been procured by fraud and perjury of Vincent. Thereafter, she filed an amended motion, the date of the filing of which is not given, but it was executed by her on September 1, 1926. Therein she alleged that he was not a bona fide resident of the state of Texas or of Dallas county for the period required by the statutes of that state; that she had not deserted him; that he had not prepared a home for her in California, but, at the very time he claimed to have done so, he was indulging in drunkenness and debauchery and living with another woman whom he had taken there from El Paso, and "that during the years 1920 to 1923, inclusive, following the time when the plaintiff was arrested in California for a violation of the Mann Act [18 USCA §§ 397–404] the plaintiff lived with another woman and in 1924, at the time of the filing of this suit for divorce the plaintiff was living with said woman and at the time of the granting of the decree of divorce in this case in May, 1924, the plaintiff was guilty of the same wrong." She also alleged that the purpose of plaintiff in obtaining the divorce was to marry another woman and to deprive the movant of any right to participate in the trust estate whenever it might be turned over to him. October 11th, following, Vincent made a contract with Mrs. Jane Kerens, wherein he agreed, if the trust should be terminated, that the trustee should deliver to Mrs. Kerens $300,000 in cash or valued securities, and should keep an additional $100,000 in trust for her lifetime. Three days later, both parties appeared in person and by attorney, the agreement was presented to the Texas court, was by it approved, her motion denied, and the decree of divorce declared to be final.

All of the above was known to the trustee at the time it entered upon the consideration of the last application of Vincent.

The application of Vincent covered, by division of dates, the time beginning with January 1, 1923. It contains a rather detailed narrative of his whereabouts and associates. It shows that he had no fixed business; that he spent most of the time going all over this country in an automobile. Up to the time of his marriage with Mrs. Linn, he had various associates upon some of these trips. After the marriage, Mrs. Kerens and two children, which they had adopted, usually accompanied him. Their stopping places were sometimes in hotels in cities and sometimes in farmhouses and tourist camps. The application was supported by sixty signed letters, statements, or affidavits. This supporting proof purported to cover the places where he was for any appreciable time during the five-year period and also most of his traveling companions upon these trips when he had companions. The unanimous purport of this tendered proof was that he had maintained entire sobriety so far as the witnesses knew or believed and it evinced considerable opportunity upon their part to be familiar with that fact. They also covered his good conduct and attested his universal proper behavior. After receiving the application, the trustee notified the two sisters, appellants here, of the filing of the application, and, upon their request, forwarded to them copies of the application and accompanying tendered proof. They were repeatedly invited to submit any proof they had to the contrary and postponements of the determination on

the application were made for their benefit. Also, the trustee appointed a reputable attorney of St. Louis and gave him full powers to make investigation of the supporting proof and such further personal investigations "as to you may seem necessary or proper to the end that you may advise the trustee as to whether or not Mr. Kerens has during the past five years of his own free will lived a life of sobriety and good behavior so as to justify the termination of the trust." The investigator was also authorized to incur any reasonable expense and to visit any witness or community he might think proper "to fully and thoroughly accomplish the purpose in hand." The investigator made a reasonably thorough investigation as to the character of the persons who made this supporting proof and verified their adherence to the statements made by them. He did this by personally interviewing those who were in St. Louis, by making a trip to Dallas, Tex., where several of them lived and where Kerens had been for some of the time, and by writing to others and to apparently responsible persons who knew or knew of the reputations of such persons. Had the entire proof and knowledge of the trustee consisted solely of this supporting proof and the investigation made thereof, there could be no hesitation in saying that Vincent had submitted a well-nigh perfect case to the trustee. However, that was not all that the trustee knew. It knew that, from the time shortly following his father's death, Vincent had started out to procure this money; that he had attempted to defeat the will by the suit in the state court; that he had filed four separate applications, the first for a period beginning shortly after his father's death, and the others following repeatedly each year after the first; that during those periods he had not ceased his objectionable conduct; that he had endeavored to deceive the trustee by affidavits which were admittedly false; that these affidavits were filed only a week before the present period under consideration began; that the verity of those affidavits was insisted upon in a sworn statement made to the trustee almost six months later; that those affidavits and that sworn statement were left with the trustee for the purpose of being effective until the trustee denied those pending applications about the middle of the present five-year term; that he had secretly divorced his first wife and in a week had married the woman who was alleged to have been connected with some of his escapades; that his first wife had filed the motion in the state court of Tex-

as making most serious allegations amounting to perjury; that she had charged therein that during the first year of the period here involved, and in 1924 up to the time of filing his suit for divorce and at the time the decree in that suit was granted, he was living with another woman, and that one of the purposes of the divorce action was to marry the woman and deprive his wife of any right to participate in the trust estate; that he had avoided a trial of those issues by entering a contract with his former wife by which she was to receive $300,000 and a life income from $100,000 more. In short, the trustee knew that Vincent would not stop at false swearing to obtain this money; that he had within the five-year period, attempted to deceive the trustee by false swearing, and that he stood accused of acts of a most serious nature which, if true, would have prevented any fair-minded man from honestly determining that he had pursued good behavior during the five-year period involved. In this situation, it was obviously the duty of the trust company to be very much on its guard and to make a reasonably searching investigation to be sure that it would not be imposed upon. No reasonably prudent business man would have entered a business undertaking in a situation of this character without thoroughly investigating the charges contained in Mrs. Kerens' motion. The will placed upon this trustee an equally serious obligation, both legally and practically, because its determination involved, not only the obligation to carry out the expressed wish of the testator, but the grave property rights of the two sisters would be settled by that determination. Although the trustee knew of this litigation in Texas and had conferred with Vincent's attorney, employed in connection with resistance to the motion filed by his divorced wife, and had taken care of the fee of that attorney ($7,000) because it feared serious consequences to Vincent therefrom, it never attempted any investigation of the truth of those charges and never took any steps whatever in connection therewith until Mrs. Kerens filed her protest that such was enough to defeat the application of Vincent, and that, if the trust was terminated, she would hold the trustee responsible. Even then its investigation seems to have been confined to sending its investigator to Dallas, where he procured statements of the various attorneys connected with the cause. His investigation and report were confined to the matter of whether Vincent had committed perjury as to the residential qualifica-

tions in Texas. It does not pretend to go at all into the matter of the truth of the other serious charges made by the divorced wife in her motion. Thus, the investigation was not only far from complete, but it avoided the most serious matters bearing on the question before the trustee. But the trustee could not help but know that the pressure of these serious charges had been virtually bought off for a very large sum of money. The suggestion that Vincent had entered into the contract for the purpose of providing for his former wife and child is ridiculous and the trustee knew that it was ridiculous. It knew this because a St. Louis attorney had endeavored to secure a property settlement of this character and had, to one of the officers of the trustee, made threats of prosecutions of Vincent for these perjuries, but had met with no success in procuring such settlement because the trustee regarded his statements as "a bluff"; that it was after this failure and, possibly, to secure this property settlement that this motion was filed by Mrs. Kerens. The trustee knew, as well as everybody else connected with the transaction, that what Vincent did in that contract was forced from him by the extremity in which he found himself.

In the face of this situation, the trustee refused the request of local counsel for Mrs. Colket to let her appear in person before it, to permit her counsel to present an oral argument to it, or to call Vincent before it at her request for cross-examination, but, instead, permitted her only to present written statements, her counsel a written argument and written statements of witnesses. This conduct closed the door to the best source of information the trustee had, which was the cross-examination of Vincent himself, nor did the trustee seek any information whatsoever from the divorced wife who had made these charges.

In our opinion, the insistence upon these false affidavits for the purpose of deceiving the trustee was such conduct as, by itself, should have prevented an allowance of this application, and an allowance thereof in the face of this admitted situation should be regarded as arbitrary and unreasonable. When to this is added the situation that the trustee made no attempt to investigate whether Vincent had been living with a woman for almost a year and a half of this five-year period and while he was undivorced, the arbitrary action of the trustee is conclusively shown. It deliberately ignored determinative facts which it knew and it deliberately closed its eyes to the investigation of other facts which had been seriously and formally charged and which it must have appreciated, from what it already knew about the connection between Vincent and the woman involved, might be well founded.

The attitude of the trust company in the execution of this trust and in the conduct of this litigation is rather enlightening as well as astonishing. This record shows that, instead of closely following the terms of the trust, for the proper effectuation of one of its main, if not the main purpose (the reformation of Vincent), by confining him to a relatively modest income, thus accentuating his desire to reform in order to secure this fortune, the trustee has been exceedingly liberal in its allowances of money to him; that it has stretched the "emergency" provided for in the will to very elastic proportions. There is testimony here that the main trust officer and the present president of the trustee stated that he was prejudiced in favor of Vincent. This is denied and may not be true, but the circumstances of this litigation very clearly show that the trust company, for some reason, is very desirous of terminating this trust. It is charged in the evidence that there is an arrangement by which Vincent will leave this fund, with the exception of $300,000 to be paid the former Mrs. Kerens, in trust with the trustee if he succeeds in terminating the present trust. Be that as it may, the entire burden of this case has been assumed by the trust company. As matter of fact, the trust company should be rather in the position of a stakeholder because it should be impartial and unconcerned as to whether its order be approved or not, and one would naturally have expected Vincent and his former wife, as a beneficiary under her contract, to have been on one side of this controversy, and the sisters upon the other. Such are the real interests of the persons and the only persons who have any claim upon this fund. Although he and his former wife are made parties defendant and file answers insisting upon the verity of the determination made by the trustee, yet no syllable of testimony was introduced upon that side of the controversy, except by the trustee. A consideration of the minutes of the trustee in connection with determination of this application is rather convincing of the prejudice of Mr. Orr, its president.

We are convinced that the round situation here was that the trustee was desirous of terminating this trust and of making a determination which would have that result; that

it gave little or no consideration to the matter of the false affidavits, and that it made no investigation of some of the most serious charges of misconduct made by the former Mrs. Kerens in her motion; that all of these matters occurred within the five-year period; that any of them, if true, would have absolutely prevented an honest determination in favor of Vincent on this application, and that the determination reached is arbitrary, unreasonable, and unjust and should be set aside.

II. It is urged by appellants that the court erred in denying motions for allowance from these trust funds of necessary expenses incurred by them (including counsel fees) in this litigation. The action of the court was proper. While the trustee assumed the burden of this litigation, adverse to appellants, yet the real contest was between Vincent and appellants. It was essentially an adversary proceeding so far as appellants were concerned to protect their own interests. In a sense, appellants were sustaining the will and the trust thereunder, but essentially they were doing so for their own individual interests. They were protecting themselves and no one else. In such a situation, appellants have no such claim against the fund. Tincher v. Arnold (C. C. A.) 147 F. 665, 677, 7 L. R. A. (N. S.) 471, 8 Ann. Cas. 917.

The action of the court in denying the above motions for allowances from the trust fund is affirmed. The decree approving the determination of the trustee that Vincent Kerens had complied with the provisions of his father's will and holding that the trust is terminated thereby is reversed, with directions to set such decree aside and to enter a decree that such determination by the trustee was arbitrary and does not operate to terminate the trust, and that such trust remains unaffected by such determination.